# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

_____

Michael Jeffers,
     Petitioner


    vs                          Case No. 1:02cv883
                                    (Dlott, J.; Hogan, M.J.)


Tim Brunsman,[1]
     Respondent

_____

## REPORT AND RECOMMENDATION
_____

Petitioner, a prisoner in state custody at the Chillicothe Correctional Institution

---

[1]In the petition, petitioner properly named as respondent James Erwin, who was then Warden of Chillicothe Correctional Institution (CCI), where petitioner is incarcerated. However, since the time petitioner initiated this action, James Erwin was replaced by Tim Brunsman as CCI's Warden. Because Tim Brunsman is the individual who currently has custody of petitioner, the caption of this case is hereby changed to reflect the proper party respondent. *See* Rule 2, Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.

in Chillicothe, Ohio, has filed this action with the assistance of counsel from the Ohio Public Defender's Office pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition, respondent's return of writ, and petitioner's "traverse" in reply to the return of writ, as well as the transcript of the state criminal trial proceedings. (*See* Docs. 1, 7, 13).

## Factual And Procedural Background

On December 23, 1999, petitioner was indicted by the Hamilton County, Ohio, grand jury on one count of aggravated robbery as defined in Ohio Rev. Code §2911.01(A)(1) and one count of robbery as defined in Ohio Rev. Code § 2911.02(A)(2); a firearm specification was attached to each count. (Doc. 7, Ex. A). After a jury trial, petitioner was found guilty of the charged robbery offense and attached firearm specification, but was acquitted on the aggravated robbery charge. (*See id.,* Ex. B). On June 16, 2000, petitioner was sentenced to consecutive terms of imprisonment of two (2) years for the robbery offense and three (3) years for the firearm specification. (*Id.*).

With the assistance of counsel, petitioner filed an appeal with the Ohio Court of Appeals, First Appellate District, raising among other claims the following assignments of error:

**Second Assignment Of Error:** The evidence adduced at trial was insufficient as a matter of law to sustain the conviction [for robbery with a firearm specification].

**Fourth Assignment Of Error:** Appellant was denied a fair trial by the misconduct of the assistant prosecuting attorney at trial.

(*Id.,* Ex. C). On May 25, 2001, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the trial court's judgment in a published opinion, *State v. Jeffers,* 757 N.E.2d 417 (Ohio Ct. App. 2001). (*See also id.,* Ex. E).

With the assistance of new counsel from the Ohio Public Defender's Office, petition next sought leave to appeal to the Ohio Supreme Court. In his memorandum in support of jurisdiction, he presented as propositions of law essentially the same claims that he had raised to the Ohio Court of Appeals in his second and fourth

assignments of error. (*See id.,* Ex. F). On September 5, 2001, the Ohio Supreme Court denied petitioner leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (*Id.*, Ex. H).

On November 25, 2002, petitioner's counsel filed the instant petition for writ of habeas corpus, alleging the following grounds for relief:

> **Ground One:** [Petitioner's] conviction is not supported by sufficient evidence because there was no evidence that a gun was used or available at the robbery.

> **Ground Two:** [Petitioner] was denied a fair trial because of prosecutorial misconduct during closing arguments.

(Doc. 1, p. 4).

The petition does not pose any statute of limitations issue because it was filed within the applicable one-year limitations period set forth in 28 U.S.C. § 2244(d). Moreover, petitioner has exhausted all available state remedies with respect to his claims. Therefore, the Court will proceed to address each of petitioner's grounds for relief in light of the arguments asserted by respondent in the return of writ.

## OPINION

### A. Petitioner Is Not Entitled To Relief Based On His Claim Alleged In Ground One Challenging The Sufficiency Of Evidence

In Ground One of the petition, petitioner contends he was denied due process because the evidence is insufficient to support his conviction for robbery with firearm specification. (Doc. 1, p. 4; *see also* Doc. 13, pp. 3-8).[2] Contrary to respondent's contention in the return of writ (*see* Doc. 7, Brief, p. 9), the federal constitutional "sufficiency of evidence" claim was raised by petitioner on direct appeal to the state

_____

[2]Although the petition itself is vague and provides little guidance about whether petitioner is contesting his conviction for both robbery and the firearm specification (*see* Doc. 1, p. 4), in his "traverse" brief, petitioner focuses his arguments only on his conviction on the firearm specification (*see* Doc. 13, pp. 3-8).

courts in a separate assignment of error than his corollary state-law "manifest weight of the evidence" claim. (*See* Doc. 7, Ex. C). Therefore, the Court concludes the constitutional claim is not waived and is subject to review on the merits.

The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing petitioner's claim of error on the merits. (*See* Doc. 7, Ex. E, pp. 2-5). Before considering the claim, the court first made findings of fact, which are presumed correct under 28 U.S.C. § 2254(e)(1), about the evidence presented at trial regarding the incident giving rise to the robbery charge and attached firearm specification:[3]

> At trial, Tyna Atkinson, a clerk at United Dairy Farmers (UDF) convenience store, testified about the robbery, which occurred in December 1999. Atkinson was working in the evening, when a person approached the counter of the store and demanded money. Atkinson's back was toward the person, but she recognized the voice as that of a regular customer. Thinking the assailant was not serious, she turned around to see a man wearing a flannel shirt, with another flannel shirt on his head that partially obscured his face.
>
> Atkinson asked the man if he was joking about the demand for money, and he replied, "No, ma'am, if you don't hurry up, I'm going to blow your head off." At that point, Atkinson saw that one of the man's hands was in his pocket holding what Atkinson believed to be a gun. Atkinson gave the assailant the money from both of the store's cash registers, and he left. Atkinson called the police, but they could not locate the suspect on the night of the offense.
>
> Three days later, a man entered the store to make a purchase. Atkinson testified that, when she heard his voice, she immediately recognized him

---

[3]28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Petitioner has neither argued nor demonstrated by clear and convincing evidence that these factual findings made by the Ohio Court of Appeals in adjudicating petitioner's sufficiency of evidence claim are erroneous.

4

as the person who had committed the robbery.  After he left the store, she recorded his vehicle's license-plate number and called the police.  The vehicle was registered in Jeffers's name, and Jeffers was arrested the same evening.  A search of Jeffers's residence yielded two flannel shirts matching the description of the shirts worn in the robbery.  At trial, Atkinson identified Jeffers as the robber.  Paul Smith, another UDF employee who was working the night of the offense, corroborated Atkinson's testimony concerning the details of the robbery, but he could not identify the perpetrator.

Jeffers and his girlfriend, Denise Alvin, testified that they were together at their home at the time of the offense.

(*Id.,* pp. 2-3).

The majority of the three-member Appeals Court panel rejected petitioner's claim that the evidence was insufficient to sustain his convictions for both the robbery offense and the attached firearm specification as follows:

. . . .In review of the sufficiency of the evidence to support a conviction, the relevant inquiry for the appellate court "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.". . .

R.C. 2911.02, the robbery statute, provides the following:

(A) No person, in attempting to commit a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

***

(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another[.]

In the case at bar, the robbery conviction was in accordance with the evidence.  Atkinson identified Jeffers as the man who had demanded money and threatened to "blow [her] head off" if she did not comply.

5

Atkinson's testimony further indicated that Jeffers in fact took all the money from the store's cash register. Her testimony was corroborated by the recovery from Jeffers's residence of shirts matching those worn by the robber. Although Jeffers emphasizes certain alleged weaknesses in the state's case, such as Smith's inability to identify Jeffers as the robber, we cannot say that the jury lost its way and created a manifest miscarriage of justice.

We also find no impropriety in the conviction for the firearm specification. To establish a firearm specification, the state is required to prove that the offender possessed a weapon that is capable of firing a projectile by means of an explosive or combustible propellant and was operable or could readily have been rendered operable at the time of the offense. But R.C. 2923.11(B)(2) provides that, in determining whether a weapon is capable of expelling a projectile, "the trier of fact may rely on circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." Further, we have repeatedly held that a victim's belief that the weapon is a gun, together with the intent on the part of the accused to create and use that belief for his own criminal purposes, is sufficient to prove a firearm specification.

In the instant case, the state provided sufficient evidence to prove the specification. The testimony indicated that Jeffers threatened to "blow [Atkinson's] head off" if she refused to give him the money. Jeffers further indicated that he possessed a firearm by the manner in which he concealed his hand in his pocket. Jeffers also used Atkinson's belief that he had a gun to effectuate his criminal purpose. Although Atkinson did not see a weapon and no weapon was recovered from Jeffers or his residence, the jury could have properly relied on circumstantial evidence in finding Jeffers guilty of the specification. The conviction was therefore based upon sufficient evidence. . . .

(*Id.,* pp. 3-5) (footnotes with citations to state case-law omitted).

One judge dissented from the majority's determination that there was sufficient evidence to support the jury's finding of guilt on the firearm specification. (*Id.,* pp. 6-7). The judge reasoned:

6

. . . .While brandishing a gun and threatening to shoot it have been held sufficient to prove operability of the firearm (a dubious proposition at best), simply *saying* one has a gun is not.  If Jeffers had been apprehended at the scene, and the pocket contained no gun, no one would contend that a firearm specification would be proper.  How can anyone say beyond a reasonable doubt both that Jeffers had a firearm, and that the firearm was operable?  The law *could* say that the mention of a gun is sufficient for a firearm specification, but it does not so state.  After *State v. Thompkins,* [678 N.E.2d 541 (Ohio 1997)], I have concurred where witnesses at least *saw* a firearm, but I refuse to do so when no firearm was observed.  I can abide only so much sophistry.

(*Id.*) (emphasis in original).

Under the applicable standard of review set forth in 28 U.S.C. § 2254(d), petitioner is not entitled to relief in this federal habeas corpus proceeding unless the state court's adjudication of his sufficiency of evidence claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942.  An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

7

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942. The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

The Supreme Court decision governing the resolution of petitioner's sufficiency of evidence claim is *Jackson v. Virginia,* 443 U.S. 307 (1979). The Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship,* 397 U.S. 358, 363-64 (1970). When petitioner raises a sufficiency of evidence claim in a petition for a writ of habeas corpus, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original).

This standard does not require the State to rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, under this standard, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*; *see also Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir.), *cert. denied,* 464 U.S. 951, 962 (1983). It is the jury's responsibility as the trier of fact to resolve conflicts in testimony, to weigh the evidence and to draw reasonable inferences from the evidence. *Jackson,* 443 U.S. at 319. Consequently, the reviewing court is not permitted to make its own subjective determination of guilt or innocence or otherwise substitute its opinion for that of the jury which convicted the petitioner. *Id.* at 318-19 & n.13; *see also York v. Tate,* 858 F.2d 322, 329 (6th Cir. 1988) (per curiam), *cert. denied,* 490 U.S. 1049 (1989).

8

In this case, although it cited only Ohio case-law, the Ohio Court of Appeals correctly identified and applied the clearly-established standards enunciated by the Supreme Court in *Jackson* in addressing petitioner's sufficiency of evidence claim. (*See* Doc. 7, Ex. E, p. 3).  Moreover, upon review of the trial transcript, this Court agrees with the state appellate court's determination that petitioner's robbery conviction was based on sufficient evidence.  As the Ohio Court of Appeals reasonably concluded (*see id.,* pp. 3-4), a rational juror could find beyond a reasonable doubt the elements of the charged robbery offense under Ohio Rev. Code § 2911.02(A)(2) from the testimony of the robbery victim, Tyna Atkinson–i.e., that petitioner committed a theft offense by threatening to inflict harm on another. Although petitioner presented an alibi defense and Paul Smith, who otherwise corroborated Atkinson's testimony regarding the details of the robbery, was unable to identify petitioner as the robber, it was solely within the jury's province to assess the credibility of the witnesses, to resolve any conflicts in the testimony, to weigh the evidence and to draw reasonable inferences therefrom.  *See Jackson,* 443 U.S. at 319, 326.

The remaining issue as to whether or not the evidence was sufficient to support petitioner's conviction on the firearm specification poses a much closer and more troubling question.

In Ohio, in order to establish guilt for a firearm specification, the State must show that the defendant "had a firearm on or about [his] person or under [his] control while committing the [charged criminal] offense and displayed the firearm, brandished the firearm, indicated that [he] possessed the firearm, or used it to facilitate the offense." Ohio Rev. Code § 2941.145(A).  As the Ohio Court of Appeals recognized in its direct appeal decision (*see* Doc. 7, Ex. E, p. 4), to establish that a "firearm" was involved, the State is required to prove that the defendant possessed or had under his control at the time of the offense a "deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant," which was operable or readily could be rendered operable.  *See* Ohio Rev. Code §§ 2941.145(C) and 2923.11(B)(1); *see also State v. Gaines,* 545 N.E.2d 68, 71 (Ohio 1989)

As the Ohio Court of Appeals also pointed out (*see* Doc. 7, Ex. E, p. 4), Ohio Rev. Code § 2923.11(B)(2) expressly provides that "the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm" in determining whether, as

9

required under § 2923.11(B)(1), there was a "firearm" involved that was "capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant."  The case-law in Ohio as to how much circumstantial evidence is necessary to prove the existence of an operable firearm in the commission of a crime has evolved over the years.  *See State v. Watkins,* No. 84288, 2004 WL 2931008, at *2-3 (Ohio Ct. App. Dec. 16, 2004) (unpublished).

Initially, in *Gaines,* the Ohio Supreme Court held that the testimony of lay eye-witnesses to an armed robbery about the gun they observed in the defendant's possession during the commission of the offense was insufficient to warrant conviction under the firearm specification statute.  *Gaines,* 545 N.E.2d at 71-72. Although the court conceded that the firearm allegedly employed in the crime need not be admitted into evidence to prove the specification, which instead "may be established by circumstantial evidence (testimony as to gunshots, smell of gunpowder, bullets or bullet holes, etc.)," the court concluded "there must be some evidence relative to the gun's operability."  *Id.*  The court went on to find that the lay witnesses, who testified regarding the appearance of the gun and their "subjective belief that it was operable," could have "drawn the same conclusion from the appearance of a toy gun."  *Id.* at 72.  Because the "evidence adduced was as consistent with facts insufficient to establish the firearm specification (e.g., a toy gun) as it was with facts sufficient to establish the specification (a firearm)," the court ruled that the State had failed to satisfy its burden of proving the firearm specification beyond a reasonable doubt.  *Id.*

Soon thereafter, in *State v. Murphy,* 551 N.E.2d 932 (Ohio 1990), the Ohio Supreme Court modified its ruling in *Gaines* by holding that proof can be established beyond a reasonable doubt that a firearm was operable at the time of the offense "by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances surrounding the crime." *Murphy,* 551 N.E.2d at 935.  The court found in that case that "[f]rom the totality of the circumstances (i.e., the gun being wrapped in a shirt, a description of the instrument from eyewitnesses, and the statement by [the defendant] that he would kill the clerk if he did not give him the money), the evidence [was] sufficient to establish proof beyond a reasonable doubt that the [defendant] possessed a 'firearm' as defined in R.C. 2923.11(B)." *Id.* at 934-35.  In a concurring opinion, Chief Justice Moyer explained:

When a person, holding what appears to be a gun, makes statements

10

from which it can be reasonably concluded that the gun is operable and therefore a firearm, such evidence is admissible to satisfy the requirements of R.C. 2923.11(B). . . .  To the argument that a person holding a toy gun may also make such a threatening statement, I would answer that a person holding a gun at someone to cause that person to perform an act and uttering words that indicate that the gun can cause harm is not entitled to a conclusion as a matter of law that the words mean nothing.  The implication of such words is that the gun is operable and a finder of fact may reasonably conclude that such words tend to prove the gun is indeed operable.

*Id.* at 936.

Most recently, in *State v. Thompkins,* 678 N.E.2d 541 (Ohio 1997), the Ohio Supreme Court extended its ruling in *Murphy*, which involved an explicit threat, to a situation involving a threat of an *"implicit* nature" based on the defendant's action of pointing a gun at the victim and telling her that he was committing a "holdup" and to be "quick, quick." *Thompkins,* 678 N.E.2d at 544 (emphasis in original).   In *Thompkins,* the court held that "[i]n determining [under the firearm penalty-enhancement specification] whether an individual was in possession of a firearm and whether the firearm was operable or capable of being rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm."  *Id.* at 545-46.  The court reasoned that the Ohio General Assembly intended in enacting Ohio Rev. Code § 2923.11(B)(2) for the State to be able to "rely on all of the surrounding facts and circumstances in establishing whether a firearm was used in the commission of a felony." *Id.* at 545 (quoting *Murphy,* 551 N.E.2d at 934).  The court explained further: "If we were to [hold otherwise], an individual who commits a holdup with a real gun could possibly avoid a firearm specification conviction simply by not saying anything and by not discharging the firearm at the time of the offense.  In our judgment, such a result would eviscerate the underlying purposes of the penalty-enhancement provisions of R.C. 2923.11(B)(1) and (2)." *Id.*

Here, as in *Murphy*, petitioner made an explicit threat–i.e., that he would "blow [Atkinkson's] head off" if she did not "hurry up" and give him money from the UDF cash registers.   (*See* Tr. 108).  However, in contrast to the Ohio Supreme Court

11

precedents discussed above, *see supra* pp. 10-12, no gun was actually observed in petitioner's possession or under his control at the time of the offense. Atkinson's subjective belief that petitioner held a gun was based solely on petitioner's explicit threat, Atkinson's observation that "something" was in petitioner's pocket, and certain gestures made by petitioner "with his hand in his pocket like there was something in there" as he threatened Atkinson about blowing her head off. (*See* Tr. 108, 112, 125, 151).

It appears there are no Ohio Supreme Court decisions directly on point with the case-at-hand. However, the Ohio appellate courts that have addressed the issue have in all but one case held that, under the authority of *Thompkins,* the words and actions of the offender in committing the underlying crime may constitute adequate circumstantial evidence to establish the elements of a firearm specification in cases where no firearm was observed at the time of the offense or recovered at a later time. *See, e.g., State v. Haskins,* No. E-01-016, 2003 WL 99572, at *7-8 (Ohio Ct. App. Jan. 10, 2003) (unpublished) (in case where no firearm was actually visible to the victim or found, defendant's explicit threat that he would use the "pistol in my pocket" if a gas station attendant did not give him the cash drawer money had the "effect on the hearer . . . that [the defendant] had a firearm and threatened to use it" and was "enough for the jury to find that [the defendant] did, in fact, have an operable firearm"); *cf. State v. Green,* 691 N.E.2d 316, 321 (Ohio Ct. App. 1996) (relying in part on Chief Justice Moyer's concurring opinion in *Murphy* regarding evidence sufficient to establish the operability of a weapon under the firearm specification, the court held that evidence of defendant's "several threats to 'blow the heads off' the victims, with his hand or hands either concealed or used in a manner consistent with having a concealed gun," and that defendant "was able to compel the surrender of the money based upon his actions and the victims' suspicions that he was armed and could carry out his threat," constituted adequate circumstantial evidence to establish possession of a "deadly weapon" element of aggravated robbery offense), *appeal dismissed,* 678 N.E.2d 1231 (Ohio 1997); *Watkins, supra,* 2004 WL 2931008, at *1, 4 (noting that "[n]umerous cases support a [firearm specification] conviction if the defendant states he has a gun and will use it, even if no one sees the gun and the gun is never produced at trial and therefore cannot be tested to determine whether it is operable;" holding that although the victim never saw a firearm, only "felt what he believed to be a firearm stuck into his side as defendant stood behind him and said '[you know,] what it is,'" and conceded on cross-examination that he was "not 100 percent sure there was a gun involved," the defendant's "actions and statements implied that the object in the

12

victim's side was a gun and that it would be used if the victim did not cooperate"); *State v. Knight,* No. 2003 CA 14, 2004 WL 830043, at *4 (Ohio Ct. App. Apr. 16, 2004) (unpublished) (holding under the authority of *Thompkins* that "both a weapon's existence and its operability may be inferred from the facts and circumstances" and that defendant's conduct in entering the store with "both hands in his jacket pockets" while demanding access to the store's cash register, and that defendant was given access to the cash register based on the employee's "belief that [defendant] possessed a gun" was "legally sufficient" to support the inference that the defendant possessed a "deadly weapon" under the aggravated robbery statute), *appeal dismissed,* 814 N.E.2d 490 (Ohio 2004); *State v. Hampton,* No. C-010159, 2002 WL 507330, at *11 (Ohio Ct. App. Apr. 5, 2002) (unpublished) (holding in abduction case that circumstantial evidence that the defendant "grabbed the victim, placed something hard in her back, told her he had a gun and ordered her to walk towards his van" was sufficient to establish elements of three-year firearm specification). *But see State v. Kovacic,* No. 2002-A-0032, 2003 WL 22235360 (Ohio Ct. App. Sept. 30, 2003) (unpublished) (although defendant's statement that he "had a gun" while he "kept his hand in his right pocket of his jacket" during the underlying aggravated robbery offense "may be sufficient circumstantial evidence of [defendant's] possession of a weapon," it did not amount to an explicit threat, or even an "implicit threat insofar as [his] declaration did not necessarily portend danger or express a desire to inflict injury on the clerk," and was inadequate to imply that petitioner possessed an operable firearm within the meaning of Ohio Rev. Code § 2923.11(B)(1)), *appeal dismissed as improvidently granted,* 816 N.E.2d 1073 (Ohio 2004).

In light of this nearly unanimous line of state court decisions regarding the circumstantial evidence considered adequate to establish the elements of the firearm specification, this Court is faced with the question about the degree of deference that must be accorded them. As an initial matter in deciding this question, the Court is mindful that the elements of a crime may be established solely on the basis of circumstantial evidence without triggering federal due process concerns. It is well-settled that the Constitution does *not* require, as was required under Ohio common law at one time prior to petitioner's trial and conviction, that where circumstantial evidence alone is relied upon by the jury in finding an essential element of the crime charged, "it must be consistent only with the theory of guilt and irreconcilable with any reasonable theory of innocence." *See York,* 858 F.2d at 326-30 (quoting *State v. Kulig,*

309 N.E.2d 897, 899 (Ohio 1974)).[4]

In addition, although no Sixth Circuit decision could be found addressing the issue, other circuit courts have held that although *Jackson* "sets forth a federal test for sufficiency of the evidence which is applicable in habeas corpus proceedings, federal courts in habeas corpus proceedings nevertheless look to the evidence the state considers adequate to meet the elements of the crime governed by state law." *Jackson v. Byrd,* 105 F.3d 145, 149 (3rd Cir.) (citing *Brumley v. DeTella,* 83 F.3d 856, 862-65 (7th Cir. 1996), and *Chalmers v. Mitchell,* 73 F.3d 1262, 1272-73 (2nd Cir.), *cert. denied,* 519 U.S. 834 (1996)), *cert. denied,* 520 U.S. 1268 (1997); *cf. Moore v. Duckworth,* 443 U.S. 713, 714-15 (1979) (per curiam) (under state law that permitted the State to rely on lay proof of sanity, the evidence was sufficient under the Constitution to support the petitioner's murder conviction based on the jury's finding that he was sane at the time of the killing). However, by the same token, the Court can conceive of instances where the evidence deemed adequate by the state courts in establishing the elements of a crime is so minimal that the state adequacy determination in and of itself amounts to a due process violation and, therefore, cannot be accorded any deference. For example, if the Ohio courts were to hold that guilt beyond a reasonable doubt on the state firearm specification can be found solely based on proof that the defendant came into a store and demanded money without indicating by his words or actions that he had a gun, this Court would have no problem in finding a due process violation under *Jackson*.

In this case, the Court is extremely troubled by the fact that no firearm was seen or felt by the robbery victim and that no firearm was found later on petitioner's person or in his residence. Petitioner's threat to Atkinson that he would "blow [her] head off," accompanied by a gesture indicating he was holding "something" in his pocket which Atkinson believed was a gun, is the only evidence in the record to support the State's position that petitioner had a firearm in his possession or under his control during the commission of the underlying robbery offense and that a "firearm" within the meaning of Ohio Rev. Code § 2923.11(B)(1) was involved which was operable or readily could be rendered operable. Because no firearm was seen or felt by the robbery victim at the

---

[4]On July 31, 1991, the Ohio Supreme Court overruled *Kulig* to the extent that case held that when the state relies on circumstantial evidence to prove an element of the offense charged, the evidence must be irreconcilable with any reasonable theory of innocence in order to support a conviction. *See State v. Jenks,* 574 N.E.2d 492 (Ohio 1991).

14

time of the offense, no firearm was later discovered at the scene, and no firearm was ever found in petitioner's possession, this Court can understand the concerns that were voiced by the dissenting state appellate judge on direct appeal about anyone being able to find beyond a reasonable doubt that petitioner actually had a firearm in his possession during the commission of the robbery and that the firearm was operable as required for a finding of guilt under the firearm specification statute. (*See* Doc. 7, Ex. E, pp. 6-7).

This case falls very close to the line where the evidences establishing guilt is so slight that no deference should be accorded the state courts' nearly unanimous determination that, under the authority of the Ohio Supreme Court's decision in *Thompkins,* the conduct and words of the defendant standing alone may constitute adequate circumstantial evidence to establish the elements of possession of a firearm and the firearm's operability under the firearm specification statute. In resolving the issue whether such circumstantial evidence satisfies the due process requirement of proof of guilt beyond a reasonable doubt on each element of a crime, the Court finds instructive an analogous line of cases addressing the constitutionality of "permissive presumptions" allowed under state law to be used by the trier of fact in determining the existence of a statutory element of a crime.

In a seminal case on the use of presumptions as an evidentiary device, the Supreme Court stated:

> Inferences and presumptions are a staple of our adversary system of factfinding. It is often necessary for the trier of fact to determine the existence of an element of the crime–that is the 'ultimate' or 'elemental' fact–from the existence of one or more 'evidentiary' or 'basic' facts."... The value of these evidentiary devices, and their validity under the Due Process Clause, vary from case to case, however, depending on the strength of the connection between the particular basic and elemental facts involved and on the degree to which the device curtails the factfinder's freedom to assess the evidence independently. Nonetheless, in criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt. . . .

15

*County Court of Ulster County v. Allen*, 442 U.S. 140, 156 (1979) (citations omitted).

The Court went on to distinguish between mandatory presumptions, where the trier of fact is required to find the elemental fact upon proof of the basic fact, and permissive inferences or presumptions, where the trier of fact is allowed but not required to infer the elemental fact from proof by the prosecutor of the basic fact. *See id.* at 157. Mandatory presumptions are strictly scrutinized as they "may affect not only the strength of the 'no reasonable doubt' burden but also the placement of that burden," which is required as a matter of due process to remain on the State. *Id.*; *see also In re Winship,* 397 U.S. at 363-64. On the other hand, permissive presumptions affect "the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference." *Allen,* 442 U.S. at 157. Therefore, a permissive presumption or inference will be upheld as constitutional under the Due Process Clause as long as there is a "'rational connection' between the basic facts that the prosecution proved and the ultimate fact presumed" or inferred. *Id.* at 165. A rational connection exists if it is "more likely than not" that the presumed or inferred ultimate or elemental fact flows from the proven basic facts.

The state courts' determination regarding the circumstantial evidence deemed adequate to establish a firearm specification is similar to a permissive presumption in that it permits, but does not require, the trier of fact to infer that the defendant actually possessed an operable firearm during the commission of the criminal offense solely based on his words and actions indicating to the victim that he had a gun. Although the question is a close one, this Court concludes under the facts of this case that there was a "rational connection" between the basic facts that the prosecution proved (i.e., the words and conduct of the criminal offender) and the ultimate facts presumed (i.e., that petitioner had a firearm in his pocket that was operable). A juror could rationally infer from petitioner's explicit threat to Atkinson that he would "blow [her] head off," and from his accompanying gesture indicating he held "something" in his pocket which he could use to follow through on his threat, that the "something" in fact was a firearm, which was operable and ready to be used against the victim if she did not comply with his demand for money from the store's cash registers.

Therefore, the Court must defer to the state courts' determination that guilt beyond a reasonable doubt on a firearm specification may be established solely on the basis of the defendant's words and conduct. In the absence of evidence that a firearm

was observed at the time of the offense or recovered at a later time, this Court would have reached a different conclusion than the jury as to whether the elements of the firearm specification had been established beyond a reasonable doubt.  However, in light of the deference that must be accorded the state courts' determination allowing the jury to infer from the petitioner's words and conduct the "elemental" facts in this case, there was sufficient evidence presented at trial to allow the issue to go to the jury and to support its ultimate verdict of guilt.

Accordingly, viewing the evidence in the light most favorable to the prosecution as required under *Jackson*, the Court concludes that the Ohio Court of Appeals' decision rejecting petitioner's sufficiency of evidence claim neither is contrary to nor involves an unreasonable application of the Supreme Court's *Jackson* precedent and is based on a reasonable determination of the facts in light of the record evidence. Petitioner is not entitled to habeas corpus relief based on the claim alleged in Ground One of the petition that the evidence presented at trial was insufficient to establish his guilt beyond a reasonable doubt on the robbery count charged against him and attached firearm specification.

### B.  Petitioner Is Not Entitled To Relief Based On His Prosecutorial Misconduct Claim Alleged In Ground Two Of The Petition

In Ground Two of the petition, petitioner alleges he was denied a fair trial due to the prosecutor's misconduct during closing argument.  (Doc. 1, p. 4).  This claim was presented by petitioner on appeal from his conviction and is subject to review on the merits.

Specifically, petitioner contends that in a "this is how we do things–trust me" argument, the prosecutor improperly "made up for [the State's] lack of proof by telling the jury that similar cases with similar problems routinely resulted in convictions." (*Id.*).  The actual remarks challenged by petitioner on direct appeal were as follows:

At some point somebody sitting in that chair in any criminal case has got to say it's him.  And she did.  (Tr. 287).

They didn't find the gun.  Well, a lot of people who commit crimes, I've been doing this a while, they don't like to keep things around that show their guilt immediately.  And it doesn't prove or disprove anything.  (Tr.

17

297-98).

(*See* Doc. 7, Ex. C, pp. 5-6, 10-11; Ex. F, p. 7).[5]

The Ohio Court of Appeals, which was the only state court to address the merits of petitioner's prosecutorial misconduct claim, rejected petitioner's assignment of error as follows:

> To obtain a reversal on the ground of improper remarks made during closing argument, the defendant must demonstrate not only that the comments were improper, but also that they were prejudicial. In the case at bar, we find no prejudicial error. Even were we to accept Jeffers's argument that the remarks improperly invited the jurors to consider evidence outside the record and thereby reassured them that the evidence against Jeffers was sufficient to convict him, we would find no prejudice to have been occasioned. In the context of the entire proceedings, the remarks were inconsequential, and the jury was properly instructed on the state's burden of proof. Under these circumstances, we cannot say that Jeffers was deprived of a fair trial. . . .

(*Id.*, Ex. E, pp. 5-6) (footnote with citation to state case omitted).

The scope of federal habeas corpus review of prosecutorial misconduct claims is narrow, as the federal court does not sit as an appellate court with supervisory power to rectify general trial errors. *Donnelly v. DeChristoforo,* 416 U.S. 637, 642 (1974). Although preliminarily the court confronted with a prosecutorial misconduct claim

---

[5]In his memorandum in support of jurisdiction to the Ohio Supreme Court, petitioner also challenged the following additional remark allegedly made by the prosecutor "to explain away the fact that money stolen from the store was not found": "Most people don't rob places to try to get the money so they can save it." (Doc. 7, Ex. F, p. 7). However, because petitioner did not cite this comment as an example of impropriety on direct appeal to the Ohio Court of Appeals, petitioner has waived any claim of prosecutorial misconduct stemming from such comment. *See* Ohio Const. art IV, § 2(B)(2); *State v. Jones,* 211 N.E.2d 198, 199 (Ohio 1965), *cert. denied,* 383 U.S. 918, 951 (1966); *see also Leroy v. Marshall,* 757 F.2d 94, 99 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985); *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982), *cert. denied,* 460 U.S. 1042 (1983).

must determine whether the challenged conduct was improper, a finding of impropriety is not sufficient in itself to amount to a due process violation. *See, e.g., Darden v. Wainwright,* 477 U.S. 168, 179-80 (1986). Rather, "[t]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982). Where no specific constitutional right is alleged to have been infringed by the prosecutor's conduct, a prosecutorial misconduct claim is one of ordinary trial error, which does not rise to the level of a constitutional violation unless the misconduct "so infected the trial with unfairness as to render the resulting conviction a denial of due process." ═══════ ═══ ═══("Even if the prosecutor's conduct was 'undesirable or even universally condemned,' this Court can only provide relief if the [conduct was] so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation.") a defendant of a fair trial. *United States v. Young,* 470 U.S. 1, 11-12 (1985).

Factors to be considered in weighing whether a prosecutor's misconduct amounts to a due process violation are: (1) the degree to which the misconduct has a tendency to mislead the jury and to prejudice the accused, *see Darden,* 477 U.S. at 182, and *Young,* 470 U.S. at 12; (2) whether the misconduct is isolated or extensive, *see Donnelly,* 416 U.S. at 646; (3) whether the misconduct is deliberate, *see id.* at 647; (4) whether the prosecutor manipulated or misstated the evidence, *see Darden,* 477 U.S. at 182, and *Berger v. United States,* 295 U.S. 78, 84-85 (1935), *overruled on other grounds by Stirone v. United States,* 361 U.S. 212 (1960); (5) the strength of the competent proof to establish the guilt of the accused, *see Darden,* 477 U.S. at 182; (6) whether the misconduct was objected to by defense counsel, *see id.* at 182-183 & n. 14, and *Young,* 470 U.S. at 13; and (7) whether a curative instruction was given by the trial judge, *see Darden,* 477 U.S. at 182. *See also Farmer v. Hofbauer,* 1 Fed.Appx. 372, 377-78 (6th Cir. Jan. 10, 2001) (not published in Federal Reporter); *Givens v. Yukins,* 238 F.3d 420 (table), No. 98-2429, 2000 WL 1828484, at **6-7 (6th Cir. Dec. 5, 2000) (unpublished); *Gordon v. Kelly,* 205 F.3d 1340 (table), No. 98-1905, 2000 WL 145144, at **7 (6th Cir. Feb. 1, 2000) (unpublished); *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir.) (citing *Serra v. Michigan Dep't of Corrections,* 4 F.3d 1348, 1355 (6th Cir. 1993), *cert. denied,* 510 U.S. 1201 (1994)), *cert. denied,* 522 U.S. 1001 (1997).

Furthermore, in this federal habeas corpus proceeding challenging a state conviction, the Court may not grant relief based on a constitutional trial error committed during the state trial unless that error "had a substantial and injurious effect

19

or influence in determining the jury's verdict." *See Calderon v. Coleman,* 525 U.S. 141, 145 (1998) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993) (wherein the standard of review enunciated in *Kotteakos v. United States,* 328 U.S. 750 (1946), a federal direct review case, was first applied to a federal collateral review proceeding under 28 U.S.C. § 2254)). Any constitutional error based on a claim of prosecutorial misconduct must meet the *Brecht* standard to warrant habeas corpus relief. *Gordon, supra,* 2000 WL 145144, at **12; *Hensley v. McGinnis,* 188 F.3d 507 (table), No. 98-1675, 1999 WL 685932, at **3-4 (6th Cir. Aug. 25, 1999) (unpublished).

This Court has reviewed each of the prosecutor's closing argument statements cited by petitioner as exceeding the bounds of propriety and agrees with the Ohio Court of Appeals' determination that they were not so egregious as to have deprived petitioner of a fair trial. First, the Court is unconvinced that the remarks were even improper, but rather merely emphasized to the jury that the robbery victim had identified petitioner as the perpetrator of the crime and that the fact that no gun was found did not preclude a finding of guilt. Even assuming the prosecutor's statements improperly invited jurors to consider evidence outside the record, they certainly did not amount to a "this is how we do things–trust me" argument which "made up for [the State's] lack of proof" as petitioner has contended. As the Ohio Court of Appeals reasonably found, the challenged remarks were "inconsequential," non-inflammatory and isolated. Moreover, it is highly unlikely that the jury would have been misled by the two passing, vague comments to enter a guilty verdict on any charge without finding that the State had met its burden of proving each element of the offense beyond a reasonable doubt. Any possibility of such prejudice resulting from any impropriety on the prosecutor's part was effectively eliminated when the trial court specifically instructed the jury on several occasions that it could not find petitioner guilty of any of the charged offenses, including the firearm specification, unless the State had proved each element of the offense beyond a reasonable doubt. (*See* Tr. 326, 334-35, 336-38).

Accordingly, because petitioner has not demonstrated the prosecutor's challenged statements in closing argument deprived him of a fair trial, he is not entitled to habeas corpus relief based on the prosecutorial misconduct claim alleged in Ground Two of the petition.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254

(Doc. 1) be DENIED with prejudice.

2. A certificate of appealability should issue only with respect to petitioner's claim alleged in Ground One of the petition that the evidence was insufficient to support his conviction and three-year sentence on the firearm specification. A certificate of appealability should not issue with respect to petitioner's remaining claims alleged in Grounds One and Two, which have been addressed on the merits herein, because petitioner has failed to make a substantial showing of the denial of a constitutional right.[6]  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith," and therefore GRANT petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date:  4/21/2005             s/Timothy S. Hogan
       cbc                   Timothy S. Hogan
                             United States Magistrate Judge

J:\BRYANCC\2005 habeas orders\02-883denypet.prosmisc.sufficevid-firearmspec.wpd

---

[6]Because this Court's adjudication of petitioner's grounds for relief does not involve the denial or dismissal of a claim on procedural grounds, the two-part test enunciated in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000), for determining whether or not to issue a certificate of appealability for procedurally-defaulted claims, is inapplicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Michael Jeffers,
      Petitioner,

                                  Case No. 1:02cv883
      v.                          (Dlott, J.; Hogan, M.J.)

Tim Brunsman,
      Respondent.

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).